Kratz v. Stocke et al.

———◇———

HENRY KRATZ, Respondent, v. VALENTINE STOCKE and JOHN FAUDI, Appellants.

| 42 | 351 |
| 69a | 396 |
| 42 | 351 |
| 89a | 675 |
| 89a | 677 |
| 42 | 351 |
| 93a | 1536 |
| 42 | 351 |
| 96a | 1159 |

1. *Promissory Note — Parol Contract, when valid consideration — Statute of Frauds.*—Where plaintiff made a parol contract for the purchase of a mill, and subsequently agreed with defendants to permit them to become the purchasers in his stead, in consideration of which agreement they gave him their note for $1000, and in pursuance of this arrangement the property was conveyed to defendants: *held,* that the assignment of the advantages to be derived from the contract for the purchase of the mill was a sufficient consideration for the note, and binding upon the maker, notwithstanding the provisions of the statute of frauds. Although a parol contract for the sale of real estate is made void by the statute, it is not wicked or corrupt, and the parties may waive its provisions. This defendants did when they accepted the title which they acquired to the property by virtue of the agreement. Had the action been prosecuted on the original contract, for specific performance, the objection that it was not in writing would have been fatal.

2. *Contracts, executed and executory.*—Where the promise originated wholly out of a transaction past and executed, the case is to be distinguished from that where, as in the case at bar, a new and executory contract arises.

*Appeal from St. Louis Circuit Court.*

Defendants asked the following among other instructions, which were refused by the court:

1. If the jury believe and find from the evidence that the consideration for the making and indorsing of the note sued upon was

the transferring by the plaintiff to the defendants of a bargain or agreement had by the plaintiff and one Henry Shenkel with Mrs. Elizabeth Timmerman, for the purchase and sale of the interest of her deceased husband in and to the Star mills, as set out in plaintiff's reply to defendants' answer; and that said bargain or agreement was a mere verbal contract between Mrs. Timmerman and the plaintiff, or plaintiff and Shenkel, and which was not, nor a memorandum thereof, reduced to writing and signed, so as to make the same a valid and binding contract, within the statute of frauds, upon the parties, then there was no valid consideration in law for the making and indorsing of said note, and the plaintiff cannot recover in the action.

2. The transferring to another a bargain for the purchase of lands, or interest in or concerning the same, is not a good consideration of a note for the payment of money.

3. Unless the alleged sale of the Star mills to plaintiff and Shenkel, as averred in the pleading of the plaintiff, was an actual sale thereof, or a contract for sale, on the part of Mrs. Timmerman, binding upon her by reason of there having been a compliance with the statute of frauds — that is to say, by reason of there having been an agreement for such sale, or some memorandum or note thereof in writing, and signed by her or by her lawful authority—then there was no good consideration for the making and indorsing of the note sued on, and thereupon the plaintiff cannot recover on the note sued on.

4. Unless the sale to plaintiff and Shenkel of the Star mills by Mrs. Timmerman, as averred in the plaintiff's petition, was an executed sale, or an agreement for sale, valid and binding on Mrs. Timmerman, then the plaintiff cannot recover; and the court instructs the jury that there is no evidence in the cause rebutting defendants' evidence that there was no such sale or valid agreement for such sale; and if the jury believe the whole evidence in the cause upon this point, the plaintiff cannot recover.

The court gave one instruction at the instance of the plaintiff, containing simply the converse of the proposition sought to be maintained in the defendants' instructions.

The facts appear sufficiently in the opinion of the court.

*Jecko & Clover*, for appellants.

I. The transferring to another a bargain for the purchase of lands, or interest in or concerning the same, is not a good consideration for a note for the payment of money. (Chit. on Cont. 43 ; Price v. Seaman, 7 Dowl. & Ryl. 14; 4 Barn. & Cres. 525 ; 2 Bing. 487 ; 10 Moore, 37 ; Ehle v. Judson, 24 Wend. 97.) A merely moral or conscientious obligation, unconnected with any prior or equitable claim, is not enough to support the promise. (3 Bos. & Pull. 249, *n.* ; Smith v. Ware, 13 Johns. 257 ; Lowe's Plead. Assump. 54 ; 16 Johns. 283, *n.*)

*Lazar & Madill*, for respondent.

I. Defendants cannot, in this case, resort to the statute of frauds to establish a want of consideration, inasmuch as they did not plead it in bar of the action. (Wildbahn v. Robidoux, 11 Mo. 659 ; 28 Cal. 632 ; 2 Story's Eq. Jur. § 756–7.)

II. But admitting that they might avail themselves of the statute, although they have failed to plead it, they cannot now invoke its aid. If the promise of the plaintiff, which was to form the consideration of defendants' note, was, when made, within the statute of frauds, it has been taken out of its operation by its having been fully executed. (Suggett's Adm'r v. Cason's Adm'r, 26 Mo. 221 ; Lobdell v. Lobdell, 36 N. Y. 331.; Abbot v. Draper, 4 Denio, 51 ; Thomas v. Dickinson, 12 N. Y. 364.)

III. Plaintiff agreed to abandon his claim in favor of the defendants and endeavor to procure their substitution as purchasers. He kept his agreement, abandoned his contract of purchase in favor of the defendants, procured their acceptance as purchasers, gave up the opportunity to reimburse himself for the expense he had been to in closing up his business by accepting this property. This was an injury to him, and, with his efforts in procuring the substitution of the defendants as purchasers, constitutes a sufficient consideration to support the notes given by the defendants. (33 Barb. 294 ; 8 Mo. 675 ; 38 Mo. 147 ; 2 Watts, 104.)

Even if the note was given in consideration of the sale of a

parol agreement for an interest in land, still the weight of author-ity is decidedly against the defense relied on. (Hardwick v. Blanchard, Gow's R. 109; Seaman v. Price, 10 Moore, 34; 2 Edw. Ch. 514; Trask v. Vinson, 20 Pick. 105, 111; Abell v. Douglass, 4 Denio, 305, 311; Horner v. Wood, 15 Barb. 371; Hasford v. Carter, 10 Abbott, 432; Sandford v. Morris, 34 N. Y. 315.) In the case of Ehle v. Judson, 24 Wend. 97, the plaintiff's assignor had made no parol contract for the purchase of the farm of Blatherwick, so that there was not even an obligation of honor resting upon Blatherwick to convey the same. The plaintiff's assignor was to do nothing after the making of the agreement, whereas in the case at bar the plaintiff was to assist in procuring the defendants' substitution as purchasers in his stead. The consideration of the note in the case referred to was the time and trouble expended by the plaintiff's assignor prior to its execution. It was exclusively an executed one, whereas in the case at bar the plaintiff was, after the execution, still to render and did render valuable services.

WAGNER, Judge, delivered the opinion of the court.

This action was brought upon a promissory note for one thousand dollars, made by the defendant, Stocke, payable to the order of defendant, Faudi, and indorsed by the latter. The answer admits the execution and indorsement of the note, and its delivery to and ownership by the plaintiff, but alleges that it was procured by the fraud and misrepresentation of the plaintiff, and that it had no consideration to support it. The reply traverses these allegations of fraud and want of consideration, and sets forth in full the transactions out of which the note sprang.

The facts seem to be briefly these: The defendant, Stocke, and one Jacob Timmerman were copartners, and, as such, were the owners of a certain leasehold, situated in the city of St. Louis, whereon was erected a flouring mill, known as the Star mills. Timmerman died, and his wife administered on the estate, and by an order of the Probate Court she was authorized to sell the mill at private sale. The agent of the administratrix

entered into negotiations with plaintiffs for the sale of the mill, concluded a contract and fixed upon a price, and gave orders to the attorney for the administratrix to draw up a conveyance to be executed by her. The agreement was wholly verbal, no writing having passed between the parties. Subsequently the defendants, ascertaining that plaintiff had purchased the property, were anxious to procure the same, and after considerable negotiations agreed to give him two thousand dollars if he would permit the defendants to become the purchasers and use his influence to secure their substitution, and allow the conveyance to be made to them instead of the plaintiff. This was finally agreed to, and the defendants executed two promissory notes for one thousand dollars each, one of which notes is the foundation of this suit.* The agent was then notified of the transaction and requested to accept the defendants instead of the plaintiff, and the sale was carried out in pursuance of this arrangement, and the property conveyed to the defendants by the administratrix.

There does not appear to be anything to support the allegation that the note was procured by fraud and misrepresentation, and the main point relied on by the counsel for the plaintiff is that the original contract or agreement for the purchase of the property by the plaintiff from the administratrix, not being in writing, was void by the statute of frauds, and therefore furnishes no consideration to support the promise of the defendants. An assignment of a debt or a right is a good consideration for a promise by the assignee. The validity of the transfer will always be upheld if the assignee obtains a benefit which the law considers a sufficient and proper consideration to found a promise upon.

An injury to the party to whom the promise is made, or a benefit to the party promising, has been universally held a sufficient consideration. Mr. Chitty, in speaking on the subject, says that the main rule in regard to the sufficiency of the consideration seems to be that it may arise either, first, by reason of a benefit resulting to the party promising, or, at his request, to a

* It appears that one Shenkel had negotiated jointly with plaintiff for the purchase of the property, and one note for one thousand dollars was delivered to the former.

third person, by the act of the promise; secondly, on occasion of the latter sustaining any loss or inconvenience, or subjecting himself to any charge or obligation, at the instance of the person making the promise, although such person obtain no advantage therefrom. (Chit. on Cont. 30.)

The assignment of the advantages to be derived by the contract for the purchase of the mill, in the present case, was a sufficient consideration and binding on the promisor, unless the action can be defeated by interposing the statute of frauds. The appellants' counsel relies on two cases to support his view of the law— Price v. Seaman, 4 Barn. & Cres. 525, and Ehle v. Judson, 24 Wend. 97.

The case of Price v. Seaman was first decided in the Court of Common Pleas, and will be found reported in 10 Moore, 34, and 2 Bing. 437, and was thence carried by writ of error into the King's Bench. The case is precisely in point, the facts being essentially the same with the one at bar. In the Common Pleas the court unanimously overruled the defense, and held the defendant bound by his promise—Best, C. J., who delivered the opinion, saying: "Although it has been objected that none of the counts in the declaration can be supported, the fourth was clearly proved, and is of itself sufficient to entitle the plaintiff to recover, as it is therein alleged that he relinquished his bargain and gave the defendant an opportunity of becoming the purchaser." (10 Moore, 83.)

In the King's Bench the court does not undertake to overrule the judgment of the Common Pleas, but the opinion is placed upon a different ground, that the declaration must be presumed good after verdict. The Chief Justice remarked: "The plaintiff, in his declaration, has alleged that he had bargained and agreed with one J. E. for the purchase of certain freehold houses. We must take that to mean that he had made a valid bargain, and, as a writing is essential to the validity of such a bargain, it must, after verdict, be presumed to have been in writing." The point was distinctly made by both counsel in both courts, that there was no consideration for want of a writing.

The case of Ehle v. Judson, 24 Wend. 97, is, at first blush, a

Kratz v. Stocke et al.

strong authority for the appellants, but upon a more close and minute examination may be distinguished from the present case. There the action was by the plaintiff as the holder of a note payable to Elisha Swift or bearer, for the sum of one hundred dollars, transferred after maturity. The defense set up was want of consideration. The defendant had been in negotiation with one Blatherwick for the purchase of a farm, but, not agreeing as to the price and terms of payment, abandoned the negotiation. Elisha Swift then treated with Blatherwick for the purchase of the farm on his own account, and induced Blatherwick to accept from him a less sum, and also to reduce the amount of the cash payment to be made on the conveyance of the property. Swift told Blatherwick that he thought he should take the farm. The agreement was by parol. In this state of the negotiation, Judson, the defendant in the cause, solicited Swift to give up his bargain and consent to his becoming the purchaser upon the terms which Blatherwick had agreed to accept from him. The latter assented to the proposition, provided Judson would give him his note for one hundred dollars to pay him for his time and trouble in negotiating his purchase. Judson accordingly gave the note and became the purchaser of the farm. Upon this state of facts, the Circuit Court rendered judgment for the plaintiff. The cause was then taken to the Supreme Court, and the judgment reversed. Bronson, J., in his opinion, said the note was given on a past or executed consideration. It was to compensate Swift for what he had done in negotiating for the farm and obtaining the offer of better terms than Blatherwick had proposed to accept when the defendant was in treaty for the purchase. He was unable to see how that made out a good consideration for the promise. Swift had not acted for the defendant, but for himself. If a verbal contract had been completed, it would have been void under the statute of frauds. But he had not even made a void contract, if such an expression could be tolerated. He had only got an offer of terms from Blatherwick, and had told him he *thought* he should take the farm. The owner was under no obligation, not even in honor, to sell upon those terms, or to give Swift a preference over any other person on whatever terms he might ultimately conclude to part with his

property. In that case not even a moral obligation arose. Swift said he thought he would take the property, but no definite agreement or understanding was arrived at. The consideration was for the negotiation or treaty, which was past and executed, without any request, and nothing more was provided to be done. Here a new consideration springs up after the terms were fixed and agreed upon between the plaintiff and Mrs. Timmerman's agent. The defendants not only get an assignment or transfer of the plaintiff's bargain, but they employ and request him to procure the defendants to be substituted in his place, which he did accordingly.

In the case in Wendell, the promise originated wholly out of a transaction past and executed; here, in addition to the executed contract, an executory contract arises.

In Trask v. Vinson, 20 Pick. 105, the doctrine laid down in Price v. Seaman, in the Common Bench, is approved and the case quoted with approbation. A similar ruling is made in Bailey v. Le Roy, 2 Edw. Ch. 514, and this view of the law is cited as authority and approved by Mr. Addison in his valuable treatise on contracts. (Addison on Cont. 18–30.)

Now, although a parol contract for the sale of real estate is by the statute made void, it is not illegal. The Legislature, for purposes of public policy, have seen fit to require a writing to evidence the sale of lands. Yet if this mode is not pursued the contract is neither wicked nor corrupt, and the parties may waive the statutory provision if they will. The objection would unquestionably have been fatal if the action had been prosecuted on the original contract against Mrs. Timmerman, the administratrix, for specific performance. She could have pleaded the statute, and it would have been a complete and perfect bar, though she would not have been bound to plead it; and the facts show that she did not plead it, but executed the contract. The assignment of the contract, and getting the defendants substituted instead of the plaintiff, and procuring the conveyance to be made to them, constitutes the consideration of the defendants' engagement, whence they derived a substantial benefit and advantage.

If the contract had turned out to be inoperative, and the administratrix had refused to convey, then the consideration would have

failed, and no action would have accrued.    But such is not the
fact.    The estate has been conveyed in pursuance of the agree-
ment.    The defendants accepted the title which they acquired by
virtue of that agreement, and no reason is perceived why they
should not be held to abide by their stipulation.    It follows, there-
fore, that the instruction  given by the court at the instance of the
plaintiff was correct ; and the instructions asked by the defend-
ants, which asserted the converse of the proposition contained in
the instruction given, were rightfully refused.

The judgment will be affirmed.    The other judges concur.